| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 9:16-CR-17(3) |
| | § | |
| ADOLFO GARCIA | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Adolfo Garcia's ("Garcia") *pro se* Motion for Hardship Credit for Hard Time Served (#256), wherein he requests the court to grant him two days of sentence credit for every one day he has served while on "lock-down status" due to Coronovirus Disease 19 ("COVID-19").  The Government filed a response in opposition (#260). Having considered the motion, the Government's response, the record, and the applicable law, the court is of the opinion that Garcia's motion should be denied.

I.   Background

On June 1, 2016, Garcia was charged in a single-count Indictment with Conspiracy to Distribute and Possess with the Intent to Distribute 50 Grams or More of a Mixture or Substance Containing Methamphetamine, in violation of 21 U.S.C. § 846.  On November 22, 2016, Garcia pleaded guilty to Count One of the Indictment.  On May 11, 2017, the court sentenced Garcia to 100 months' imprisonment, to be followed by a five-year term of supervised release, pursuant to a binding plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Garcia's projected release date is June 13, 2023.

On May 21, 2021, Garcia filed the instant Motion for Hardship Credit for Hard Time Served, wherein he alleges that Federal Correctional Institution Three Rivers ("FCI Three Rivers"), located in Three Rivers, Texas, is "a hard time detention facility" because of lock-down

measures imposed to prevent the spread of COVID-19. Specifically, Garcia claims the lock-down measures at FCI Three Rivers violate prisoners' rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

Garcia alleges that during the COVID-19 pandemic, prison officials operated a "communal segregation prison," kept prisoners locked in their cells for more than twenty-two hours per day, equating to solitary confinement, and limited inmates' access to recreational services to three times per week, for less than one hour each time. Garcia also complains that the meals served at FCI Three Rivers fell "below federal prison standards," prisoners had to drink "discolored and brown water" from sinks in their cells due to "long lockdown hours," and personal hygiene was "significantly degraded." Garcia further asserts that it would take months during the pandemic to see dental, medical, and mental health staff, which exacerbated the mental health effects of being confined to a cell for up to twenty-two hours per day. Garcia contends that these conditions amount to cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and requests two days of sentence credit for every one day served at FCI Three Rivers during this time period.

II.     Analysis

Once a sentence of imprisonment has been imposed, the court's authority to reduce or modify the sentence is limited. *Dillon v. United States*, 560 U.S. 817, 819 (2010); *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020); *United States v. Banks*, 770 F.3d 346, 348 (5th Cir. 2014); *United States v. Hernandez*, 645 F.3d 709, 711 (5th Cir. 2011); *United States v. Alonzo*, 516 F. Supp. 3d 623, 632 (E.D. Tex. 2021). Pursuant to 18 U.S.C. § 3582(c), a district court is authorized to modify a previously imposed term of imprisonment only under the following

circumstances: (1) when the court receives a motion from the Director of the Bureau of Prisons ("BOP"), or under certain circumstances, a motion from the defendant, indicating that there are extraordinary and compelling reasons warranting a reduction and that reduction is consistent with applicable policy statements issued by the Sentencing Commission; (2) when the district court, pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure, acting within 14 days after the imposition of sentence, wishes to correct an arithmetical, technical, or other clear error identified in a previously imposed sentence; (3) when the defendant has provided substantial assistance and the government moves for a sentence reduction; or (4) when the defendant has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c); *see United States v. Lopez*, 989 F.3d 327, 332 (5th Cir. 2021) ("Section 3582(c)(2) permits the discretionary modification of a defendant's sentence 'in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o),' so long as the 'reduction is consistent with applicable policy statements.'"); *Banks*, 770 F.3d at 348; *United States v. Meza*, 620 F.3d 505, 507 (5th Cir. 2010).

Garcia fails to identify a statutory basis by which the court may accord him sentence credit for two days served for every day he spends incarcerated, or so-called hardship credit. Moreover, "[t]here is no federal statute that permits shorter sentences for inmates serving 'harder' time in certain prisons." *United States v. Nevarez-Ledezma*, No. CR 19-1379 KG, 2021 WL 4430157, at *1 (D.N.M. Sept. 27, 2021); *United States v. Ruiz-Lujan*, No. CR 17-2490 KG, 2021 WL 2141857, at *1 (D.N.M. May 26, 2021); *United States v. Bear*, No. 1:19-CR-10034-01-CBK, 2021 WL 1925488, at *1 (D.S.D. May 13, 2021) (finding no federal statute "that would allow a

3

prisoner to receive two days credit for each day served on a sentence due to the conditions of confinement"). Other courts across the nation have similarly rejected such a claim for lack of a cognizable legal basis. *See, e.g.*, *United States v. Green*, No. CR415-204, 2021 WL 1929552, at *1 (S.D. Ga. May 13, 2021) (finding no authority to support defendant's motion for "hardship credit for hard time served"); *United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021) (same); *United States v. Brown*, No. 2:14-CR-130, 2021 WL 1725545, at *1 (E.D. Tenn. Apr. 30, 2021) (same); *United States v. Barnes*, No. CR 113-199, 2021 WL 1395199, at *1 (S.D. Ga. Apr. 13, 2021) (same).

    A.    <u>Compassionate Release</u>

To the extent that Garcia's motion could be construed as a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A), such relief is not warranted. The First Step Act allows a defendant, who has fully exhausted his administrative remedies, to file a motion for compassionate release based on extraordinary and compelling reasons. When a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise

discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Garcia neither asserts nor provides documentation showing that he exhausted his administrative remedies with the BOP prior to filing the instant motion. *See, e.g.*, *Mitchell*, 2021 WL 1827202, at *2; *Barnes*, 2021 WL 1395199, at *1 (holding the defendant did not show that she had exhausted her administrative remedies, and thus, the court would not consider her motion under § 3582(c)(1)(A) for "hard time" credit). Moreover, nothing in Garcia's motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment. Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

compelling.² However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.³ Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary" and "compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). A review of dictionary definitions also sheds light on the meaning of these terms. The word "extraordinary"

---

² In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

³ U.S.S.G. § 1B1.13 was last amended on November 1, 2018. Until recently, the Commission has been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). On August 4, 2022, the United States Senate confirmed seven new members to the Commission. Although the Commission now has a quorum for the first time in over three years, it has not promulgated any additional policy statements or amendments to the guidelines.

is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see Mitchell*, 2021 WL 1827202, at *2. "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

In his motion, Garcia raises concerns about the restrictions imposed on all the inmates housed at FCI Three Rivers, which, at present, totals 1,312 individuals. Garcia does not describe any conditions or unique vulnerabilities that apply specifically to him. He, in essence, contends that relief is warranted simply because he is a prisoner at FCI Three Rivers. *See Mitchell*, 2021 WL 1827202, at *1. Nonetheless, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements." *United States v. Chavez,* No. 3:18-CR-0426-B-11, 2020 WL 4500633, at *3 (N.D. Tex. Aug. 5, 2020) (quoting *United States v. Delgado*, No. 3:17-CR-242-B (01), 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020)); *see United States v. Ashley*, No. CR 17-00282-KD-B-1, 2020 WL 7771215, at *4 (S.D. Ala. Dec. 30, 2020) (holding that, in considering a motion for compassionate release, the court must take an "individualized and particularized review" of the defendant's characteristics (citing *United States v. Tobias*, No. CR 19-143 (BAH), 2020 WL 4673414, at *5 (D.D.C. Aug. 12, 2020); *United*

7

*States v. Brown*, No. 13-CR-00030 (ESH), 2020 WL 4346911, at *3 (D.D.C. July 29, 2020); *United States v. Joaseus*, No. 9:16-CR-80011-ROSENBERG, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020))).

Garcia seemingly fails to recognize that COVID-19 has disrupted everyone's daily routines and limited their opportunities, both inside and outside of prison, and many experience substantial fear and anxiety about the effects of the disease. In an attempt to keep inmates and staff safe, the BOP has modified its operations depending on the operational level of the institution. Currently, "[i]nstitutions determine their operational level (Level 1, Level 2, or Level 3) based on the facilities' COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations series, and their respective community transmission rates."[4] According to the BOP's website, the "BOP recognizes the importance for inmates to maintain relationships with friends and family. During modified operations in response to COVID-19, the BOP suspended social visitation, however, inmates were afforded 500 (vs. 300) telephone minutes per month at no charge to help compensate for the suspension of social visits." Moreover, the BOP has modified its operations to allow "[i]nstitutions with active COVID-19 cases [to] make exceptions to . . . programming requirements for the safety of inmates and staff." *See United States v. Dodge*, No. CR 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone,

---

[4] FCI Three Rivers is currently operating at Level 2. According to the BOP, Level 1 requires a medical isolation rate of less than 2%, a facility vaccination rate of greater than or equal to 65%, and a community transmission rate of less than 50 per 100,000 over the last seven days; Level 2 requires a medical isolation rate of 2% to less than 7%, a facility vaccination rate of 50% to less than 65%, and a community transmission rate of 50 to 99 per 100,000 over the last seven days; and Level 3 requires a medical isolation rate of greater than or equal to 7%, a facility vaccination rate of less than 50%, and a community transmission rate of greater than or equal to 100 per 100,000 over the last seven days.

are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person."); *see also United States v. Wright*, No. 17-CR-0301, 2020 WL 7334412, at *5 (D. Minn. Dec. 14, 2020) ("It is undisputed that the BOP has implemented numerous measures to prevent and mitigate COVID-19 outbreaks within its facilities."). The safety measures that have been implemented benefit Garcia, other inmates, and BOP staff members during the pandemic. Indeed, as of October 7, 2022, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 1,312) and 3 staff members at FCI Three Rivers as having confirmed positive cases of COVID-19, 416 inmates and 130 staff members who have recovered, and 0 inmates who succumbed from the disease. Hence, the mitigation efforts appear to have been successful, and the consequential inconveniences presented by the BOP's modified operations on Garcia's daily activities do not create an extraordinary and compelling reason to accord him hardship credit.

      B.    <u>Computation of Sentence Credit</u>

To the extent Garcia argues that the BOP has incorrectly calculated his time-served credit, the court lacks jurisdiction to consider his motion. *See, e.g., Cazun-Menendez v. United States*, No. 3:21-CV-01233-N (BT), 2021 WL 3477351, at *1 (N.D. Tex. July 2, 2021), *adopted by* No. 3:21-CV-01233-N (BT), 2021 WL 3473265 (N.D. Tex. Aug. 6, 2021). The proper procedural vehicle for such a request is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *United States v. Rodriguez-Falcon*, 710 F. App'x 242, 243 (5th Cir. 2018); *Robertson v. Werlich*, 667 F. App'x 853, 854 (5th Cir. 2016); *Arreola-Amaya v. Fed. Bureau of Prisons*, 623 F. App'x 710, 710 (5th Cir. 2015); *see Green*, 2021 WL 1929552, at *2 ("[T]he proper procedure for

Defendant to mount a judicial challenge to the BOP's decision is to file a civil action under 28 U.S.C. § 2241 in the district and division of her confinement."); *United States v. King*, No. CR 2:17-823-2, 2021 WL 1550307, at *1 (S.D. Tex. Apr. 19, 2021) (holding that defendant's motion for hardship credit for hard time served should be brought pursuant to a § 2241 petition in that court where defendant is incarcerated after first exhausting her administrative remedies); *Alzamora v. United States*, No. 1:14CV384, 2017 WL 4155099, at *3 (E.D. Tex. Sept. 19, 2017). Additionally, a prisoner must file his civil action under 28 U.S.C.§ 2241 in the district and division where he is confined. *Green*, 2021 WL 1929552, at *2. Garcia is not confined in the Eastern District of Texas; rather, he is incarcerated at FCI Three Rivers in the Southern District of Texas. Under these circumstances, the court is without authority to rule on a § 2241 petition filed by Garcia.

In any event, a federal prisoner must exhaust his administrative remedies before seeking habeas corpus relief in federal court under § 2241. *United States v. Aparicio*, 963 F.3d 470, 478 (5th Cir.), *cert. denied sub nom. Aparicio-Leon v. United States*, 141 S. Ct. 435 (2020); *Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018); *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017) (citing *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir.), *cert. denied*, 568 U.S. 993 (2012)), *cert. denied*, 138 S. Ct. 1035 (2018); *United States v. Setser*, 607 F.3d 128, 133 n.3 (5th Cir. 2010), *aff'd*, 566 U.S. 231 (2011). This exhaustion requirement applies to the computation of prior custody sentence credit. *See, e.g.*, *Aparicio*, 963 F.3d at 478; *Smith v. McConnell*, 950 F.3d 285, 287 (5th Cir. 2020); *Falcetta*, 734 F. App'x at 287; *Rodriguez-Falcon*, 710 F. App'x at 243; *Smith v. Upton*, 477 F. App'x 289, 289 (5th Cir. 2012). Exceptions are warranted only in "extraordinary circumstances," such as where

administrative remedies are unavailable or "wholly inappropriate" or where the petitioner has demonstrated the futility of administrative review. *Fillingham*, 867 F.3d at 535; *Gallegos-Hernandez*, 688 F.3d at 194; *Schipke v. Van Buren*, 239 F. App'x 85, 86 (5th Cir. 2007). Garcia, again, fails to demonstrate that he exhausted his remedies with the BOP prior to filing the present motion.

Moreover, under 18 U.S.C. § 3585(b), a federal district court does not have the authority to compute the amount of credit for time served to be accorded to a defendant. *See United States v. Wilson*, 503 U.S. 329, 334-35 (1992); *United States v. Taylor*, 973 F.3d 414, 418 (5th Cir. 2020); *Smith*, 950 F.3d at 288; *Aparicio*, 963 F.3d at 478; *In re U.S. Bureau of Prisons*, 918 F.3d 431, 439 (5th Cir. 2019); *United States v. Hankton*, 875 F.3d 786, 792 (5th Cir. 2017). Rather, the Attorney General, acting through the BOP, is responsible for administering the sentence and determining prior-custody credit for a defendant. *See Wilson*, 503 U.S. at 335; *Aparicio*, 963 F.3d at 478; *Smith*, 950 F.3d at 288; *Rodriguez-Falcon*, 710 F. App'x at 243; *Hankton*, 875 F.3d at 792; *Green*, 2021 WL 1929552, at *1 (denying defendant's motion for hard time credit in part because "the BOP, not the Court, possesses the authority to determine the manner in which credit for prior custody is applied toward a federal sentence"); *Barnes*, 2021 WL 1395199, at *1 ("[M]atters concerning length of sentence determinations are better directed to the BOP, not this Court."). Accordingly, the court is without jurisdiction to consider Garcia's request to adjust the BOP's calculation of his sentence.

III.     Conclusion

In sum, the court does not have the authority to alter Garcia's sentence.  *See Varner*, 948 F.3d at 253 (finding that the district court lacked jurisdiction to entertain a motion to correct or change a sentence unless it fell into one of the recognized categories of post-conviction motions set forth in FED. R. CRIM. P. 35 or 36 or in 18 U.S.C. § 3582(c)); *United States v. Castelan*, 73 F. App'x 80, at *1 (5th Cir. 2003) (holding that "[t]he district court is prohibited from modifying a term of imprisonment once it has been imposed except in certain limited circumstances") (citing *United States v. Early*, 27 F.3d 140, 141-42 (5th Cir. 1994)); *accord United States v. Jones*, 962 F.3d 1290, 1297 (11th Cir. 2020) ("A district court lacks the inherent authority to modify a term of imprisonment."); *United States v. Ellis*, No. CR 15-124, 2020 WL 5073562, at *1 (E.D. La. Aug. 26, 2020) (citing *Early*, 27 F.3d at 141-42).  Garcia has not demonstrated any extraordinary and compelling reasons to release him from custody or to accord him additional sentence credit.  Moreover, the court is without jurisdiction to calculate his time-served credit.  In addition, Garcia has failed to exhaust his administrative remedies, which is a prerequisite for seeking relief in court regarding any policies or procedures of the BOP.  For these reasons, Garcia's *pro se* Motion for Hardship Credit for Hard Time Served (#256) is DISMISSED.

SIGNED at Beaumont, Texas, this 7th day of October, 2022.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE